UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00530-DJH

**TONI MITCHELL, et al.**                                                                 **PLAINTIFFS**
*Administratrix of the Estate of D'Juantez Anthony Mitchell*

VS.

**BRYAN ARNOLD, et al.**                                                                  **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Before the Court in this 42 U.S.C. § 1983 civil rights action is Plaintiffs Toni Mitchell and Courtney Jewell Moore's ("Plaintiffs") Motion to Compel the deposition of former Louisville/Jefferson County Metropolitan ("Louisville Metro") Mayor Greg Fischer and the Rule 30(b)(6) deposition of a Louisville Metro and/or Louisville Metro Police Department ("LMPD") representative regarding the Department of Justice ("DOJ") investigative report on these institutions. (DN 77). Defendants Bryan Arnold, Steve Conrad, Robert Schroeder, and the Louisville Metro/LMPD ("Defendants") have filed a Motion for Protective Order in response. (DN 78). This matter has been referred to the undersigned United States Magistrate Judge for resolution of all non-dispositive matters, including discovery issues. (DN 12).

### I. Background

This lawsuit arises from the fatal shooting of D'Juantez Anthony Mitchell on May 15, 2019 by law enforcement officers during an investigative stop of Mitchell's vehicle. (DN 1, at ¶¶ 17-31). Plaintiffs Toni Mitchell (administratrix for Mitchell's estate) and Courtney Jewell Moore (guardian for Mitchell's minor children) bring claims of excessive force, battery, wrongful death, and gross negligence in violation of 42 U.S.C. § 1983 against Defendants Steve Conrad (former Louisville Metro Police Chief); Robert Schroeder (former interim Louisville Metro Police Chief);

the LMPD/Louisville Metro; and Officer Bryan Arnold in his individual and official capacity. (*Id.* at ¶¶ 37-59). Plaintiffs also assert a municipal liability (*Monell*) claim against Defendants for failure to supervise and train Officer Arnold in the use of deadly force. (*Id.* at ¶¶ 40-44).

On January 10, 2022, after over a year of discovery, Defendants moved for judgment on the pleadings as to Plaintiffs' *Monell* claim. (DN 48). Defendants also moved to stay discovery on the *Monell* claim pending resolution of their motion. (*Id.*). The undersigned stayed discovery in the case pending a ruling by the Court on Defendants' motions (DN 55), and Plaintiffs filed their response in opposition. (DN 56). Upon review of these motions and oral arguments by counsel, the Court converted Defendants' Motion for Judgment on the Pleadings into a Motion for Summary Judgment. (DN 68). The Court directed the undersigned "to determine whether the previous stay of discovery . . . should be lifted and to set a final briefing schedule for the converted motion." (*Id.*). After several status conferences to resolve the parties' discovery disputes, the undersigned lifted the stay. (DN 73). The parties ultimately reported that they had made some progress concerning outstanding discovery but were unable to reach a complete agreement as to certain depositions sought by Plaintiffs.[1] (DN 76).

Since the parties were unable to resolve their discovery disputes, the Court ordered Plaintiffs to file a Motion to Compel these depositions (DN 75). On June 7, 2023, Plaintiffs filed their Motion to Compel both the deposition of former Mayor Fischer regarding the reasoning behind Defendant Conrad's termination in 2020 and a Rule 30(b)(6) deposition of a Louisville Metro/LMPD representative regarding the DOJ report.[2] (DN 77). Defendants filed a combined response in opposition and Motion for Protective Order. (DN 78).

---

[1] The parties agreed to proceed with the deposition of former LMPD Chief Yevette Gentry and to Defendants' production of additional documents. (DN 76).
[2] The DOJ conducted a comprehensive investigation of LMPD conduct spanning nearly six years and issued a report on March 8, 2023 which found that Louisville Metro and LMPD are engaged in a pattern or practice of conduct that

II. Legal Standard

Discovery matters are "committed to the sound discretion of the district court." *In re Air Crash Disaster*, 86 F.3d 498, 516 (6th Cir. 1996) (citations and quotations omitted). Discovery is limited to matters that are nonprivileged, relevant to a claim or defense, and proportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1). Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" a party's claim or defense. *Hadfield v. Newpage Corp.*, No. 5:14-CV-00027-TBR-LLK, 2016 U.S. Dist. LEXIS 12744, at *9 (W.D. Ky. Feb. 3, 2016) (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)).

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery," provided that the party certifies to the court that it has, in good faith, conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. Fed. R. Civ. P. 37(a)(1). The nonmoving party that objects to the discovery request has the burden of showing that "the discovery requests are improper." *Polylok, Inc. v. Bear Onsite, LLC*, No. 3:12-CV-00535-DJH-CHL, 2017 U.S. Dist. LEXIS 41960, at *12 (W.D. Ky. Mar. 23, 2017). If the nonmoving party "raises an objection to discovery based on relevance, the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action." S*trategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-cv-12695, 2017 U.S. Dist. LEXIS 48375, at *7 (E.D. Mich. Mar. 31, 2017) (quoting *GCA Servs. Grp. v. ParCou, LLC*, No. 2:16-cv-02251-STA-cgc, 2016 U.S. Dist. LEXIS 171349, at *10 (W.D. Tenn. Dec. 12, 2016)).

---

deprives people of their rights under the Constitution and federal law.

In contrast, upon a showing of good cause, courts may issue a protective order that "forbid[s] the disclosure or discovery" of certain material to prevent "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Under Rule 26(c)(1), showing good cause requires the moving party "to make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements[,]" with respect to the potential of the material to annoy, embarrass, oppress, unduly burden, or unduly cost the party. *HD Media Co., LLC v. United States DOJ*, 927 F.3d 919, 929 (6th Cir. 2019) (quotation omitted); *see Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quotation omitted).

### III. Analysis

#### A. Deposition of Former Mayor Fischer

Plaintiffs are seeking to depose former Louisville Mayor Fischer regarding "all of the reasons" why he terminated former LMPD Chief Conrad on June 1, 2020. (DN 77-1, at PageID # 1904). Specifically, they argue that, if "[Conrad's] termination had anything to do with the Chief's failure to enforce policies as to race or use of force," this information would bolster their *Monell* claim. (*Id.* at PageID # 1922).

In their response, Defendants argue that former Mayor Fischer should not be subject to a deposition because he is a former high-ranking government official, he has no personal knowledge of the claims at issue in this case, and the information that Plaintiffs seek from former Mayor Fischer has already been provided by Conrad. (DN 78, at PageID # 2028-32). Defendants urge the Court to apply the "extraordinary circumstances test" adopted by a number of circuits and by some district courts within the Sixth Circuit.[3] (*Id.* at PageID # 2030; *see also EMW Women's Surgical*

---

[3] The Sixth Circuit recognized the protection given to nonjudicial high-ranking government officials in *Warren Bank v. Camp*, but it did not elaborate on the protection, and it appears to have not addressed the issue since. 396 F.2d 52, 56-57 (6th Cir. 1968).

4

*Ctr., P.S.C. v. Glisson*, No. 3:17CV-00189-GNS, 2017 U.S. Dist. LEXIS 139725, at *4 n.1 (W.D. Ky. Aug. 30, 2017) (listing cases)).

Plaintiffs, on the other hand, ask the Court to apply the analysis used in the Sixth Circuit's *Serrano* decision to the instant matter. (DN 77-1, at PageID # 1912) (citing *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). In *Serrano*, the Sixth Circuit held that the "apex doctrine"[4] did not preclude the deposition of the defendant corporation's chief executive officer. *Id.* at 902. Plaintiffs assert that former Mayor Fischer has personal knowledge regarding Conrad's dismissal and is the only person who can explain the reasoning behind his termination. (DN 77-1, at PageID # 1923). Additionally, Plaintiffs point to the fact that former Mayor Fischer is no longer an active government official as support for their contention that the extraordinary circumstances test does not apply in this case. (*Id.* at PageID # 1913).

Regardless of whether the Court applies the extraordinary circumstances test or the strict adherence to Rule 26 as outlined in *Serrano*, former Mayor Fischer should not be deposed.

First, under the extraordinary circumstances test, the general rule across the circuits is "that absent extraordinary circumstances, high-ranking officials may not be subjected to depositions or called to testify regarding their official actions." *Coleman v. Schwarzenegger*, Nos. CIV S-90-0520 LKK JFM P, C01-1351 TEH, 2008 U.S. Dist. LEXIS 70224, at *19-20 (E.D. Cal. Sep. 15, 2008) (collecting cases). These extraordinary circumstances may be met where (1) the official has first-hand knowledge related to the claim being litigated, and (2) it is shown that other persons cannot provide the necessary information. *EMW Women's Surgical Ctr., P.S.C.*, 2017 U.S. Dist. LEXIS 139725, at *6-7 (citing *Boudreau*, 2008 U.S. Dist. LEXIS 75611, at *4; *Baine v. Gen.*

---

[4] The "extraordinary circumstances test" outlined below is very similar to the so-called "apex" or "Morgan doctrine."

*Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991); *In re United States (Holder)*, 197 F.3d 310, 314 (8th Cir. 1999)).

The rationale behind this doctrine considers "the responsibilities and time constraints incumbent on high-ranking officials" and concerns that "testifying in every case to which the agency or administration is a party would monopolize the official's time." *EMW Women's Surgical Ctr., P.S.C.*, 2017 U.S. Dist. LEXIS 139725, at *6 (quoting *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (1985); *United States v. Morgan*, 313 U.S. 409, 422 (1941)).

The parties do not dispute that Fischer's former governmental position as Louisville mayor would have qualified him as a high-ranking official under the framework of the extraordinary circumstances test. *See Scott v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:20-CV-00535-BJB-CHL, 2023 U.S. Dist. LEXIS 142301, at *12 (W.D. Ky. Aug. 14, 2023) ("Mayor Greenberg is considered a high-ranking official not normally subject to the burden of depositions."); *see also Elvis Presley Enters. v. City of Memphis*, No. 2:18-cv-02718, 2020 U.S. Dist. LEXIS 125534, at *7 (W.D. Tenn. July 16, 2020). Instead, Plaintiffs argue that Fischer no longer serving in office is a "factor" when considering whether the deposition will interfere with his duties. (DN 77-1, at PageID # 1913).

Although some courts find that the rationales behind protecting state officials from deposition apply "with less force" when the proposed deponent no longer holds that position, federal courts largely appear in agreement that the extraordinary circumstances protections apply equally to current and former high-ranking officials. *Burgess v. United States*, No. 17-11218, 2022 U.S. Dist. LEXIS 226358, at *16 (E.D. Mich. Dec. 15, 2022); *see also United States v. Wal-Mart Stores*, Civil Action No. PJM-01-1521, 2002 U.S. Dist. LEXIS 6929, at *11 (D. Md. Mar. 29,

2002) ("In the absence of controlling case law to the contrary, this Court is of the opinion that the Morgan doctrine is applicable to efforts by parties to depose former high-ranking officials."); *Presti v. City of N.Y.*, 609 F. Supp. 3d 204, 207 n.2 (E.D.N.Y. 2022) (noting that the Second Circuit applies the test to former officials). While the concern that depositions would take away from the official's duties in office is no longer present, the need to protect the integrity of the underlying decision-making process and encourage people to pursue careers in public service continues to persist after the official leaves government service. *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021). Because the extraordinary circumstances test applies to former Mayor Fischer, the inquiry then becomes whether (1) Fischer possesses information essential to the case; and (2) Plaintiffs cannot obtain that information through other means.

As to the first factor, Plaintiffs argue that former Mayor Fischer has unique, first-hand knowledge of the facts at issue. (DN 77-1, at PageID # 1923). They specifically rely on Conrad's deposition, claiming that "Conrad testified he was told he was fired due to an 'institutional failure' within the LMPD." (*Id.* at PageID # 1906). Plaintiffs intend to depose Fischer about "what institutional failures the Mayor was concerned with . . . as such failures clearly could support Plaintiffs' *Monell* Claim." (*Id.*). But Plaintiffs fail to acknowledge that, earlier in the deposition, Conrad revealed exactly which institutional failure prompted Fischer to terminate him: "[t]he fact that the two officers that were involved in [the David McAtee] shooting didn't have their body cameras on . . . the mayor saw **that** as an institutional failure on my part and—and that I was—was being dismissed."[5] (DN 78-1, at PageID #2041) (emphasis added). Rather than establishing extraordinary circumstances which warrant Fischer's deposition, Conrad's deposition testimony

---

[5] During a large protest in downtown Louisville relating to Breonna Taylor's death, LMPD officers and National Guard members fired multiple shots at restaurant owner David McAtee, with a Guard member firing the round that ultimately killed him. (DN 77-2, at PageID # 1987).

7

demonstrates that Fischer's decision to terminate Conrad was not related to the facts of this case. Further, former Mayor Fischer has submitted an affidavit stating that he has no personal knowledge of "the events surrounding the shooting of D'Juantez Mitchell, the investigation thereof or the claims at issue in the above lawsuit." (DN 78-2, at PageID # 2051).

Plaintiffs also cite to *Herrera* as persuasive authority, where the Southern District of New York determined that a former mayor had unique first-hand knowledge related to the plaintiffs' race-based employment discrimination case to justify deposing him. *Herrera v. N.Y.C. Dep't of Educ.*, No. 1:21-cv-7555-MKV, 2022 U.S. Dist. LEXIS 107107 (S.D.N.Y. June 15, 2022). But the circumstances here are distinguishable because there is no evidence that the LMPD was under "mayoral control," that former Mayor Fischer was the "ultimate decision-maker" in relation to the Mitchell investigation, or that Fischer was a "micro-manager" directly involved in the department's management and operation. *Id.* at *3. Although Conrad testified that Fischer "could have gotten rid of me for any reason[,]" Plaintiffs' own motion identifies Conrad as the "chief policy maker for the LMPD." (DN 78-1, at PageID # 2049; DN 77-1, at PageID # 1915).

Plaintiffs have also not met the second extraordinary circumstances factor—that no other person possesses the information in question or that such information may not be obtained by other means. *See Watson v. City of Cleveland*, 202 F. App'x 844, 852 (6th Cir. 2006) (denying motion to compel mayor's deposition because information could be obtained from other members of the mayoral administration and through less burdensome forms of discovery). Conrad was informed of the reasoning behind his termination and has already testified to that effect. (DN 78-1, at PageID # 2041). Conrad further testified that he was given this reasoning by Deputy Mayor Ellen Hesen, another person who possesses the information that Plaintiffs seek; however, they have not attempted to depose her. (*Id.*). Finally, although Fischer has offered to respond to interrogatories

8

or requests for admission, Plaintiffs have refused to consider these less intrusive methods without explaining why they are inadequate. (DN 78, at PageID # 2026). Thus, the Court finds that extraordinary circumstances do not exist to warrant the deposition of former Mayor Fischer.

Second, even if the extraordinary circumstances doctrine does not apply, Defendants have sufficiently specified the harm that former Mayor Fischer would suffer from being deposed as required by the strict adherence to Rule 26 outlined in *Serrano*. Defendants allege that the former mayor's deposition is a fishing expedition "into a collateral issue that is too irrelevant and attenuated from the case" to be justified. (*Id.* at PageID # 2021).

In support of their assertion, Defendants point to *Graves*, in which the Sixth Circuit affirmed the District Court's ruling that a protective order was proper where the mayor, who had previously demanded the resignation of the police chief for unrelated reasons, had no relevant knowledge of the plaintiff's excessive force claim. *Graves v. Bowles*, 419 Fed. Appx. 640 (6th Cir. 2011). Like the mayor in *Graves*, Fischer does not appear to have any information relevant to Plaintiffs' claims. Although Plaintiffs assert that "the dismissal may (and likely did) result from other reasons which are not yet known[,]" the record in no way establishes that Conrad's termination was related to anything other than the McAtee shooting. (DN 81, at PageID # 2016). The facts giving rise to this action occurred on May 15, 2019, but Conrad was not terminated until June 1, 2020. (DN 1, at ¶¶ 17-31; DN 78-1, at PageID # 2040). In a televised press conference, former Mayor Fischer reported that Conrad's termination resulted from the McAtee shooting. (DN 77-1, at PageID # 1910). Despite "extensive discovery," it appears that Plaintiffs only rely on Conrad's deposition and speculative arguments to draw a tenuous connection between the two events. (DN 77-1, at PageID # 1907).

As Plaintiffs have failed to provide a factual basis supporting their contention that Fischer's deposition could produce relevant information to bolster their *Monell* claim, subjecting the former mayor to a deposition appears to serve no other purpose than to harass, annoy, or unduly burden him. Defendants' specific demonstrations of harm to former Mayor Fischer justify entry of a protective order under both Rule 26 and *Serrano*.

### B. Rule 30(b)(6) Deposition Concerning DOJ Report

In their Rule 30(b)(6) notice submitted to Defendants, Plaintiffs stated that they are seeking to depose a designated representative of Louisville Metro and/or the LMPD about "the Department of Justice Investigation into the conduct of Louisville/Metro Government and its police force and those findings and conclusions set forth in the Department of Justices' [sic] investigation and report into policing practices of the LMPD, and any consent decree related thereto." (DN 78-3, at PageID # 2053). In their reply, Plaintiffs narrowed the scope of their previous notice, stating that the deposition's focus:

> [W]ould include, for example, the underlying data developed by the LMPD and sent to the DOJ; the people involved in collecting the data; the methods used to collect the data; the discussions between the DOJ personnel and LMPD personnel concerning the data collected; discussions between the DOJ and the LMPD and the conclusions reached in the report; and the LMPD's agreement or disagreement regarding the findings of the DOJ, etc.

(DN 81, at PageID # 2067).

Defendants seek a protective order to prohibit the deposition. (DN 78). In support of their motion, Defendants allege that Plaintiffs' Rule 30(b)(6) notice is facially invalid as it does not meet the standard of particularity required by the rule.[6] (*Id.* at PageID # 2032).

---

[6] Defendants also argue that Plaintiffs cannot revise their notice in their reply brief. (DN 82, at PageID # 2192). Because the Court finds that neither Plaintiffs' original nor revised notice complies with Rule 30(b)(6)'s "reasonable particularity" standard, it need not address Defendants' additional argument.

10

Rule 30(b)(6) governs the requirements for a notice or subpoena directed to a governmental entity. Fed. R. Civ. P. 30(b)(6). It requires the party seeking the deposition of a government entity to describe "with reasonable particularity the matters for examination." *Id.* Upon receipt of the list of matters or topics, the entity is then tasked with producing a witness "knowledgeable about the subjects described in the notice and to prepare the witness or witnesses to testify not simply to their own knowledge," but the knowledge of the entity. *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-CV-345-S, 2014 U.S. Dist. LEXIS 185334, at *12 (W.D. Ky. Apr. 2, 2014).

The test for reasonable particularity is "whether the request places the party upon reasonable notice of what is called for and what is not." *Alvey v. State Farm Fire & Cas. Co.*, No. 5:17-CV-00023-TBR-LLK, 2018 U.S. Dist. LEXIS 21356, at *20 (W.D. Ky. Feb. 9, 2018) (quoting *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000)). There is some disagreement among the federal courts as to the exact meaning of the "reasonable particularity" requirement of Rule 30(b)(6). *See Green v. Platinum Rests. Mid-America, LLC*, No. 3:14-CV-439-GNS, 2017 U.S. Dist. LEXIS 237096, at *20 (W.D. Ky. Oct. 23, 2017) (discussing the various judicial standards). However, there is no dispute that topics must be stated with enough specificity to allow the entity to designate and prepare a representative to testify. *See Alvey*, 2018 U.S. Dist. LEXIS 21356, at *7 (finding that the corporate defendant could not "reasonably designate and prepare a corporate representative to testify on its behalf regarding these broad lines of inquiry."). Further, "topics not reasonably calculated to lead to the discovery of admissible evidence are likewise not within the scope of discovery." *Green*, 2017 U.S. Dist. LEXIS 237096, at *21.

The Court agrees with Defendants that neither Plaintiffs' original deposition notice nor its narrowed revision are reasonably particular enough to withstand Rule 30(b)(6)'s requirements.

First, the open-ended nature of the notice is concerning. The terms "for example" and "etc." act as catch-alls that render the deposition focus essentially limitless. (DN 81, at PageID # 2067; *see also Green*, 2017 U.S. Dist. LEXIS 237096, at *48 ("[T]he better rule in the opinion of this Court is to strike ["including but not limited to"] language as being overbroad since it imposes virtually no limitation on the questioning party."); *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 125 (D.D.C. 2005) ("Listing several categories and stating that the inquiry may extend beyond the enumerated topics defeats the purpose of having any topics at all."). The notice's over-inclusive language fails to place Defendants on reasonable notice of what is called for and what is not.

Second, although some information in the DOJ report is relevant to Plaintiffs' *Monell* claim, their notice includes information which is outside the scope of these claims. As Plaintiffs' *Monell* claim alleges that the LMPD failed to train and supervise Officer Arnold in the use of deadly force, information concerning the LMPD's use of excessive force or its failure to adequately support and supervise officers would be relevant. (DN 77-2). However, the majority of the report includes findings which are not relevant to Plaintiffs' claims and concern, for example, invalid search warrants, First Amendment violations, violations of the Americans with Disabilities Act, and inadequate responses to sexual assault and domestic violence cases. (*Id.*). Plaintiffs' notices, both original and revised, fail to differentiate between the DOJ's findings and the LMPD's data which pertain to Plaintiffs' claims and those which do not. Not only would it be unreasonable to expect Louisville Metro or the LMPD to designate and prepare a representative to testify about these broad topics, it would also be outside of the scope of discovery. As such, the Court cannot compel Louisville Metro or the LMPD to designate a representative to testify regarding the topics in Plaintiffs' Rule 30(b)(6) notice as submitted.

Even if Plaintiffs' notice was sufficient, however, none of their justifications for seeking a Rule 30(b)(6) designee from Louisville Metro or the LMPD are compelling. Plaintiffs mainly assert two arguments in support of compelling the deposition. First, Plaintiffs state that "[t]here can be no real argument that the information sought by Plaintiffs does not go to the *Monell* Claim or potentially [sic] defenses the Defendants might assert against that Claim." (DN 77-1, at PageID # 1926). As discussed above, the Court finds that a majority of the topics included in Plaintiffs' Rule 30(b)(6) notices include information that is irrelevant to their *Monell* claim. Even though some of the DOJ's findings could be beneficial to their claim, it would still be inappropriate for Plaintiffs to depose a representative about these findings because the DOJ report is conclusory. The report largely consists of broad assertions against the LMPD and its practices with a few references to specific examples supporting these assertions, none of which discuss the Mitchell shooting. (DN 77-2). As the report gives little indication about the underlying data used by the DOJ to reach its conclusions, it is dubious what information a representative could provide to Plaintiffs that would bolster their *Monell* claim.

Second, Plaintiffs' stated purpose in pursuing this deposition is to discover which occurrences of misconduct the DOJ relied on to reach the conclusions in its report. (DN 77-1, at PageID # 1927). Specifically, because the investigation covered the time during which Mitchell was shot, "[t]here could even be specific information known to the LMPD and provided to the DOJ regarding Mr. Mitchell and his shooting." (*Id.* at PageID # 1925). In support of their contention that the LMPD can testify as to this information, Plaintiffs cite to a section of the report in which the DOJ states that its findings are based on Louisville Metro's and the LMPD's own data. (*Id.* at 2070). This data included "thousands of documents," "thousands of hours of body-worn camera footage[,]" "conversations with hundreds of LMPD officers, Louisville Metro

13

employees, and community members[,]" "numerous onsite tours[,]" and other types of evidence (*Id.*).

Rather than persuade the Court that Louisville Metro or the LMPD is capable of designating a representative to testify at a Rule 30(b)(6) deposition, Plaintiffs' reliance on the preceding information supports the opposite conclusion. Although the data relied on by the DOJ came largely from the LMPD, the vast amount of information which comprised that data would make it virtually impossible for the LMPD to designate a representative or representatives to testify as to it all, much less prepare them adequately for the deposition. Further, Defendants assert that, "[i]n response to the DOJ's request for information, LMPD primarily provided the DOJ direct access to existing LMPD databases, and the DOJ . . . drew its own conclusions as to what was relevant and significant without curation by Metro." (DN 82, at PageID # 2195). As the LMPD did not engage in any organized collection or transfer of data to the DOJ, it cannot provide information about the specific examples of misconduct on which the DOJ based its conclusions. Indeed, authorizing this deposition would essentially give Plaintiffs permission to question the designee about the entirety of the information located in the LMPD's databases, which far exceeds the scope of Plaintiff's *Monell* claim in this case.

Plaintiffs also point out that the DOJ and LMPD are engaging in negotiations for a consent decree as support for their assertion that there must be someone at the LMPD knowledgeable enough about the data behind the report's findings to testify. (DN 77-1, at PageID # 1925). However, alleging that a LMPD employee is informed about the report's findings is not the same as alleging that they have specific knowledge about the information utilized by the DOJ in reaching those findings. It is possible for the LMPD to negotiate a consent decree with the DOJ without being privy to all the facts supporting the DOJ's conclusions. Moreover, the Court is not convinced

14

that information pertaining to the consent decree is relevant to Plaintiffs' claims. Again, the consent decree would relate to all the issues discussed in the DOJ's report—most of which have no connection to Plaintiff's *Monell* claim. But even as to sections of a potential decree relating to Plaintiffs' claim, it is difficult to see how Plaintiffs would be entitled to depose an LMPD representative about negotiations relating to future resolutions to the issues described in the report.

Lastly, Defendants have met their burden of establishing good cause for a protective order under Rule 26(c)(1) to prohibit the Rule 30(b)(6) deposition. Defendants allege that Plaintiffs request a deposition that is "unduly burdensome, infeasible, unreasonably cumulative and concerns information not reasonably attributable to the organization." (DN 82, at PageID # 2195). Most of the topics included in Plaintiffs' notices are irrelevant and not important to resolve the case. The information about which Plaintiffs seek to depose a LMPD representative covers thousands of documents, hours of footage, and hundreds of interviews of both LMPD employees and community members. Requiring Louisville Metro or the LMPD to designate and prepare a witness to testify as to this vast amount of largely irrelevant information would only serve to unduly burden Defendants. Thus, Defendants have articulated specific facts demonstrating the harm they would suffer in accordance with the requirements of Rule 26(c)(1) and *Serrano* and a protective order preventing this deposition is appropriate.

## IV. Conclusion

The Court declines to compel either the deposition of former Mayor Fischer or a Rule 30(b)(6) deposition of a Louisville Metro or LMPD representative. Defendants have put forth particularized statements of fact establishing sufficient harm to justify a protective order prohibiting these depositions. Fischer's lack of personal knowledge about the Mitchell shooting and the fact that the information sought by Plaintiffs can be obtained by deposing other people or

15

through less burdensome means satisfies the elements of the extraordinary circumstances test. But even if the test was inapplicable, the record demonstrates that Conrad's termination was unrelated to the facts of this case; thus, deposing Fischer would only serve to annoy, harass, or cause him undue burden. Regarding Plaintiffs' Rule 30(b)(6) deposition, the overly broad nature of Plaintiffs' request is not "reasonably particular" as required by the Rule. Additionally, given the conclusory nature of the DOJ report, the large volume of data underlying its findings, and the DOJ's direct access to the LMPD databases during its investigation, Defendants could neither designate nor prepare a witness to testify as to the data behind the DOJ report. To subject Defendants to Plaintiffs' requested deposition concerning such a large amount of largely irrelevant information would be unduly burdensome. Since the Court denies Plaintiffs' Motion to Compel, they are not entitled to an award of reasonable costs and attorney's fees.

## ORDER

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Compel the deposition of former Mayor Fischer and a Rule 30(b)(6) representative deponent from Louisville Metro or the LMPD (DN 77) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Request for Reasonable Costs and Attorney's Fees (DN 77) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Protective Order to prevent the deposition of former Mayor Fischer and Plaintiffs' Rule 30(b)(6) deposition (DN 78) is **GRANTED**.

Copies:      Counsel of Record